845 F.2d 1033
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Thomas R. TICE and William E. Meyers.
 No. 87-1398.
 United States Court of Appeals, Federal Circuit.
 Feb. 8, 1988.
 
 Before FRIEDMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and MAYER, Circuit Judge.
 FRIEDMAN, Circuit Judge.
 
 DECISION
 
 1
 The decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board), affirming the patent examiner's rejection under 35 U.S.C. Sec. 103 (1982) of all 60 claims of the appellants' patent application, is affirmed with respect to claims 1-43 and 48-60 and reversed with respect to claims 44-47.
 
 OPINION
 
 2
 * The invention relates to a method of encapsulating living cells, thereby protecting those cells from being rejected by the organism into which they are injected, and the resulting product. The capsule is porous and allows interaction between the injected organism and the cells. Nutrients can reach the cells and the cells in turn can interact with the injected organism. If, for example, live insulin-producing pancreas cells were injected into a diabetic, daily insulin injections would be unnecessary. Although the diabetic's body would reject unprotected cells, encapsulation of the cells prevents rejection and enables the cells to produce insulin for the diabetic's body.
 
 
 3
 Three basic steps are used to encapsulate cells. First, cells are dispersed in a nontoxic solution. Then this mixture is formed into discrete droplets which must remain intact until the third step, the formation of a capsule around the droplet, is complete. The capsule may be formed by joining, or "cross-linking," proteins and/or polysaccharides (long-chain sugar molecules) to one another, thereby forming a rigid wall. As a preferred embodiment, pores are formed in the capsule wall to permit passage of cell nutrients and other molecules into and out of the capsule.
 
 
 4
 The 60 claims in the application cover the process for encapsulation, the resulting capsule product, a method of forming pores in the capsule, and a method for propagating cells within the capsule. Only three of the claims are independent; the balance are dependent.
 
 
 5
 The examiner rejected all 60 claims as obvious over a combination of three prior patents, Lim, Van Velzen, and Yapel, and a publication by Chang. (The examiner also rejected some of the claims under the first paragraph of 35 U.S.C. Sec. 112 as based on a non-enabling specification, but the Board reversed that rejection.) The Board affirmed "the examiner's [Sec. 103] rejection on the combination of references," but concluded that Lim alone "would have rendered obvious appellants' claimed invention at the time it was made" and "restrict[ed its] main comments to this patent."
 
 II
 
 6
 We affirm the Board's rejection of claims 1-43 and 48-60, and reverse the Board's rejection of claims 44-47.
 
 
 7
 A. Lim teaches the encapsulation of cells by forming discrete droplets of a polysaccharide solution which are then temporarily gelled, rendering them insoluble. A permanent capsule can be formed around these temporarily gelled droplets.
 
 
 8
 According to Lim, one way to form the permanent capsule is by suspending the temporary capsules in an aqueous solution containing water soluble proteins. These proteins may be used to crosslink the polysaccharides of the temporary capsule, and may also be crosslinked by the known technique of interfacial polymerization. Using this procedure, aqueous droplets containing the gelled temporary capsules are then placed into a non-aqueous processing solution containing a crosslinking polymer (such as a protein) and a crosslinking agent. As claim 6 of Lim states, "the membrane is formed by an interfacial polymerization wherein the temporary capsules are used as a core material in the aqueous phase of a water-in-oil emulsion."
 
 
 9
 The appellants' independent product and process claims (1 and 23) use the open terms "comprising" and "which comprises" rather than the closed term "consisting of." In those product claims that contain the term "consisting of," at least one of the components that the product may consist of is disclosed in Lim. See, e.g., claims 2 and 25 ("consisting of ... gelatin," which is disclosed in Lim at col. 2, line 51). The process claims are similarly structured.
 
 
 10
 Claim 48 is for "[a] method of propagating cells which comprises growing said cells inside a capsule having a wall comprising a crosslinked protein." This claim and those depending upon it (claims 49-60) similarly are broad enough to include limitations which would have been obvious in light of Lim.
 
 
 11
 B. There is nothing in Lim, however, that would have rendered obvious the technique the appellants use to control the size of the pores in the capsule, which is set forth in claims 44-47. Lim states that: "[w]ithin limits, semipermeability can be controlled by setting the molecular weight of the crosslinking polymer, its concentration, and the duration of reaction." The appellants control pore size by incorporating easily-dissolved or degraded materials into the crosslinked wall. After the capsule is formed, the embedded materials are dissolved or enzymatically degraded, and pores tailored to the capsule's purpose are left behind. See claims 44-47. Lim does not suggest or make obvious the different process the appellants use to control pore size.
 
 
 12
 C. The combination of Lim and Chang, Van Velzen, and Yapel does not support the Board's obviousness determination with respect to claims 44-47. In particular, those references do not suggest using appellants' method of controlling pore size.
 
 
 13
 Chang is directed to encapsulating procedures and does not suggest modifications to control pore size. The Board did not discuss whether appellants' pore forming claims would have been obvious in light of Chang. The portion of Chang before us does not discuss pore formation.
 
 
 14
 Van Velzen does not suggest using the appellants' process of pore formation, and the Board did not discuss that issue.
 
 
 15
 Yapel does not suggest how to form pores in a capsule. The product in Yapel is not even a capsule, but is a drug surrounded by a solid protein spherule. Yapel does not suggest the process the appellants use to control pore size in capsules.
 
 
 16
 The record before us contains only a part of the Chang publication and of the Van Velzen and Yapel specifications. We cannot say that the appellants' process for controlling pore size would have been obvious in light of those portions of these references in combination with Lim.